ATTORNEY GENERAL, ex rel. COOK, v. BURHANS.

1. OFFICERS—STATE LEGISLATOR—REGENT OF UNIVERSITY—ELECTIONS.

Pursuant to mandatory provisions of the Constitution, votes cast at popular election to elect defendant a regent of the State university during the term for which he had been elected and was serving as a member of the State legislature were void (Const. 1908, art. 5, § 7).

2. QUO WARRANTO—PARTIES—ATTORNEY GENERAL—REGENT OF UNIVERSITY.

Quo warranto proceeding by attorney general to oust State senator from office of regent of State university was proper since defendant, who claimed election thereto during term for which he had been elected and was serving as a State legislator, had not received votes capable of being recognized and was a usurper of the office of regent (Const. 1908, art. 5, § 7).

3. COLLEGES AND UNIVERSITIES—UNIVERSITY OF MICHIGAN.

The University of Michigan is a State institution with obligation on the legislature to maintain it.

4. SAME—REGENTS OF UNIVERSITY—BODY CORPORATE—STATUS—DUTIES.

The regents of the University of Michigan are State officers and, as the board of regents, constitute a body corporate that is a department of the State government having general

supervision of the university and the direction and control of all expenditures from the university funds (Const. 1908, art. 11, §§ 4, 5).

5. QUO WARRANTO—EFFECT OF OUSTER—OFFICERS—VACANCIES.

Ouster of usurper of office of a regent of the State university by information in nature of quo warranto by the attorney general on relation of party receiving third highest number of votes at election in which two members were to be elected created a vacancy in the office to be filled by governor pursuant to special constitutional provision for filling vacancies in such office (Const. 1908, art. 11, § 3; art. 16, § 5; 1 Comp. Laws 1929, § 3350).

6. COSTS—QUO WARRANTO—PUBLIC OFFICERS.

No costs are awarded in quo warranto proceedings to oust usurper from office of regent of the university of Michigan.

CHANDLER, C. J., and STARR, J., dissenting in part.

Information in the nature of quo warranto by Herbert J. Rushton, Attorney General, upon the relation of Franklin M. Cook, to determine title to the office of Regent of the University of Michigan. Submitted October 7, 1942. (Docket No. 35, Calendar No. 42,007.) Ouster granted December 23, 1942.

*Miller, Canfield, Paddock & Stone,* for plaintiff and relator.

*Earl L. Burhans, in pro per.*

WIEST, J. The attorney general, ex rel. Franklin M. Cook, by information in the nature of quo warranto, seeks ouster of defendant from the office of regent of the University of Michigan on the ground that he has no legal right to the office and is a mere usurper therein and also asks the court to adjudicate that Franklin M. Cook is the regent. Defendant by answer asserts right to hold the office by valid election thereto. At the biennial State election in April, 1941, two regents of the University of

Michigan were to be elected and defendant was a candidate. At that time he was a member of the State senate and is still such officer. The board of State canvassers found that defendant received 410,767 votes, Alfred B. Connable, 409,672, Franklin M. Cook, relator herein, 408,438, and some lesser votes for other candidates, and certified the election of defendant and Connable to the secretary of State. Defendant filed his oath of office as regent and has since acted as such.

Defendant is not a regent of the University of Michigan, for every vote cast for him at such election was void under article 5, § 7, of the Michigan Constitution, which reads:

"No person elected a member of the legislature shall receive any civil appointment within this State or to the senate of the United States from the governor, except notaries public, or from the governor and senate, from the legislature, or any other State authority, during the term for which he is elected. All such appointments and all votes given for any person so elected for any such office or appointment shall be void."

This provision applies to elections and its mandate must be obeyed. *Fyfe* v. *Kent County Clerk*, 149 Mich. 349.

Defendant having usurped the office of regent, in defiance of the mandate of the Constitution barring him under any circumstances from holding such office and rendering all votes cast for him void, it was proper for the attorney general to bring this proceeding in the nature of quo warranto to oust him from such office. The provision in the Constitution not only rendered defendant ineligible to the office but to prevent his intrusion therein rendered every vote cast for him void. Defendant re-

ceived no votes capable of being recognized by law.

Defendant contends that regents of the university are not State officers but only officers of the corporate body known as the board of regents of the university.

The university is a State institution, with obligation on the legislature to maintain it. The regents are State officers and, as the board of regents, constitute the body corporate known as the "Regents of the University of Michigan"* and have the general supervision of the University and the direction and control of all expenditures from the university funds. Const. 1908, art. 11, § 5. In *People, for use of Regents of the University of Michigan,* v. *Brooks,* 224 Mich. 45, we held the board of regents is a department of the State government created by the Constitution to perform State functions.

Defendant is a usurper in the office of regent and a writ of ouster will issue if necessary to remove him therefrom. This ouster creates a vacancy in the office of regent.

The statute, 1 Comp. Laws 1929, § 3350 (Stat. Ann. § 6.693), provides that:

"Every office shall become vacant, on the happening of either of the following events, before the expiration of the term of such office: * * *

"6. The decision of a competent tribunal, declaring void his election or appointment."

The Constitution of 1908, art. 16, § 5, provides:

"The legislature may provide by law the cases in which any office shall be deemed vacant and the manner of filling vacancies, where no provision is made in this Constitution."

---

* See Const. 1908, art. 11, § 4.—REPORTER.

The Constitution also provides in art. 11, § 3:

"When a vacancy shall occur in the office of regent it shall be filled by appointment of the governor."

The ouster of Mr. Burhans creates a vacancy to be filled by the governor. No costs.

BOYLES, NORTH, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred with WIEST, J.

NORTH, J. (*concurring,*) I concur in the result reached by Mr. Justice WIEST; but to avoid a possible misconstruction of our holding, I think the following should be specifically noted. Defendant while holding the office of State senator sought the nomination and election as a regent of the University of Michigan for a term which began a year before the expiration of defendant's office as senator. Both offices are State offices and are incompatible. Under the constitutional provisions (art. 5, § 7, art. 11, § 3) and the statute (1 Comp. Laws 1929, § 3350 [Stat. Ann. § 6.693]) cited in my Brother's opinion defendant was ineligible to election as regent for a term which began prior to the expiration of defendant's term as senator and our decision herein creates a vacancy in the office of regent. See *Fyfe* v. *Kent County Clerk,* 149 Mich. 349, and *Murtha* v. *Lindsay,* 187 Mich. 79.

Under the cited constitutional provision (article 5, § 7) it cannot be said that since the two offices are incompatible, when defendant assumed the office of regent he vacated the office of senator. To so hold would be to circumvent the express provisions of the Constitution, and in effect to nullify its clear mandate.

I am not in accord with the opinion written by Mr. Chief Justice CHANDLER wherein he holds that by our judgment in this case Mr. Cook should be installed in the office of regent of the university. To so hold would be in plain violation of the specific provision of article 11, § 3, of the Constitution and also of article 6, § 10, of the Constitution. Section 3, art. 11, contains the following explicit provision: "When a vacancy shall occur in the office of regent it shall be filled by appointment of the governor;" and section 10, art. 6, reads: "Whenever a vacancy shall occur in any of the State offices, the governor shall fill the same by appointment, by and with the advice and consent of the senate, if in session." The office of regent of the University of Michigan is a State office; and our decision herein creates a vacancy in that office. Regardless of any statutory provision which may be considered as in conflict with the two above-quoted constitutional provisions, I am unable to understand how it can be held that the statute controls instead of the constitutional provisions.

Notwithstanding the foregoing would seem to be conclusive of the question under consideration, it may be pertinent to point out that the decisions upon which Mr. Chief Justice CHANDLER relies have no application to the instant case. First, it should be noted that the statutory provisions quoted in my Brother's opinion (3 Comp. Laws 1929, §§ 15274–15276 [Stat. Ann. §§ 27.2318–27.2320]) have been a part of the statutory law of this State since the enactment of the statutes of 1846. See Rev. Stat. 1846, chap. 136, §§ 3, 4, and 5. These provisions are still effective (in the absence of some other conflicting statutory or constitutional provision) provided the vacancy to be filled is not a *State* office.

But they are not operative as to vacancies in State offices because subsequent to the enactment of the statute each of the above-quoted constitutional provisions was embodied in the Constitution of 1850* and carried over into the Constitution of 1908. No provision will be found in the Constitution of 1835 which is comparable to either of the constitutional provisions hereinbefore quoted.

As noted above none of the cases cited in the opinion of Mr. Chief Justice CHANDLER tends to sustain his position because none of them involves the filling of a vacancy in a *State* office. The following are the cases upon which my Brother relies: *People, ex rel. Falkenbury,* v. *Miles,* 2 Mich. 348, in which the office involved was that of county clerk; *People, ex rel. Wagenseil,* v. *Stephenson,* 98 Mich. 218, involved, as appears from the original records in this court, the office of city clerk of Port Huron; and *Emmons* v. *Board of Supervisors,* not reported but cited in the *Stephenson Case,* involved the office of township supervisor, as also appears from the original records in this court. It would seem to go without saying that the decision in each of these cases in no way conflicts with the constitutional provision that: "Whenever a vacancy shall occur in any of the *State* offices the governor shall fill the same." And it is equally plain, in view of the quoted provisions of the Constitution, that this court in this proceeding is without power to fill the vacancy in the office of regent created by our decision herein.

Chief Justice CHANDLER says: "We should not apply a portion of one statute, which has remained on the books for almost 100 years, and then utterly

---

* Article 13, § 6, art. 8, § 3.—REPORTER.

disregard its remaining provisions and apply those of another statute, even though of equal age and respect." I am in full accord with this statement, except where, as in my Brother's opinion, an attempt is made to apply a statutory provision in a manner which is plainly violative of constitutional provisions.

The conclusion reached by Mr. Justice WIEST should be the decision of this court herein; and if necessary a writ of ouster should issue. No costs allowed.

BOYLES and BUTZEL, JJ., concurred with NORTH, J.

CHANDLER, C. J. (*dissenting.*) We all agree that the votes cast for the defendant Burhans for the office of regent of the University of Michigan while he was a member of the State Senate are void, but we do not agree on the result of such holding.

Mr. Justice WIEST holds that the ouster of the defendant creates a vacancy in the office of regent because of 1 Comp. Laws 1929, § 3350 (Stat. Ann. § 6.693), and that the vacancy under the provision of article 11, § 3, of the Constitution, shall be filled by appointment of the governor. This same provision is found in article 13, § 6, of the Constitution of 1850, and the statute upon which Mr. Justice WIEST relies has remained unchanged since it was amended by Act No. 172, Pub. Acts 1851. Relator Cook's information is based upon the quo warranto statutes, 3 Comp. Laws 1929, § 15271 *et seq.* (Stat. Ann. § 27.2315 *et seq.*). Many decisions of this court have been based upon the use of this procedure, among these being *People, ex rel. Falkenbury,* v. *Miles,* 2 Mich. 348, decided in 1852, and *People, ex*

*rel. Wagenseil,* v. *Stephenson,* 98 Mich. 218, decided in 1893. In the *Falkenbury Case* Mr. Justice Doug-LASS said:

"In a State like ours, where public officers are nearly all elective, and where public opinion must usually be an effective check upon all usurpations of office without some pretences of right, founded upon the suffrages of the people, it is obvious that the question most frequently to be tried on informations like the present, will be whether the defendant received a majority of the votes cast at an election. If he did not, some one else must have received it. In such cases; and in others of like character, it is apparent that the right of some other person is necessarily involved in the issue between the people and the defendant, and being so involved, the statute permits the Court, when justice so requires, to adjudicate upon it. The averment in question seems designed merely to furnish some foundation in the record for this judgment.

"It is not traversable by the defendant, for it is no concern of his who is entitled to the office if he is not. Of course it is not admitted by his omission to traverse it. There is no need that it should be special, because no issue can be formed upon it. The defendant is required to set forth the facts which constitute his own title specifically by plea. An issue of law or fact must generally be formed by the replication to this plea. This is the issue to be determined. If it is determined against the defendant, and if it is a necessary inference from this judgment and the facts upon which it is based, that the person alleged to be entitled to the office the defendant has usurped, in law and in fact is so, the Courts are authorized, from considerations of public policy quite apparent, to affirm his right by a direct adjudication."

In the *Wagenseil Case* Mr. Justice Montgomery said:

"Upon a judgment of amotion from office, the party amoved is divested of all official authority; and excluded from office, so long as the judgment remains in force. High, Extraordinary Remedies, § 756. And, when judgment is rendered in favor of a relator, he needs no writ to invest him with the office. Under How. Stat. § 8639, he is entitled to take upon himself the execution of the office. Can this right be defeated or suspended by suing out a writ of error and giving a bond to stay execution? The statute (sections 8679, 8681) provides for a stay of execution by suing out a writ of error, but does not authorize a suspension of a judgment which requires no aid from process to give it effect. The practical result of permitting such a writ to suspend the judgment in quo warranto cases would in many cases be to defeat the relator of his remedy wholly. Such a construction is not to be indulged, except it be imperatively required by the terms, which we think is not the case here. This precise question was determined by the Court in the October term of 1886, in the unreported case of *Emmons* v. *Board of Supervisors*. See, also, *Welch* v. *Cook*, 7 How. Pr. (N. Y.) 282."

I am unable to see how we can consider an information filed under the quo warranto statutes and then deprive the relator of the benefit of those statutes.

Sections 15274–15276, 3 Comp. Laws 1929 (Stat. Ann. §§ 27.2318–27.2320), read as follows:

"SEC. 4. Whenever any such information shall be filed against any person for usurping any office, the attorney general, in addition to the other matters required to be set forth in the information, may also set forth therein the name of the person rightfully entitled to such office, with an averment of his right thereto.

"Sec. 5. In every such case judgment shall be rendered upon the right of the defendant, and also upon the right of the party so entitled; or only upon the right of the defendant, as justice shall require.

"Sec. 6. If judgment be rendered upon the right of the person so averred to be entitled, and the same be in favor of such person, he shall be entitled, after taking the oath of office, and executing any official bond which may be required by law, to take upon him the execution of the office; and it shall be his duty, immediately thereafter, to demand of the defendant in such information, all the books and papers in his custody or within his power, belonging to such office."

We are required under these statutes, in the light of the averment of the information, to render judgment upon the right of defendant, and also upon the right of the relator, or only upon the right of the defendant "as justice shall require." It does not seem to be justice to deny the relator the right to a judgment if the votes cast for Senator Burhans are void. In the light of section 6 and the facts as stated by Mr. Justice Wiest, the relator is entitled, "after taking the oath of office, and executing any official bond which may be required by law," to take upon himself the execution of the office of regent.

Mr. Connable received the highest number of countable votes and was duly elected. Relator Cook received the next highest number of countable votes and was also elected. The vacancy statute was obviously intended to cover a situation where no one other then the usurper has a claim to the office; and, unless the quo warranto statutes can be fully applied, I know of no other procedure whereby one lawfully elected to an office can gain possession of that office. We should not apply a portion of one statute, which has remained on the books for almost

100 years, and then utterly disregard its remaining provisions and apply those of another statute, even though of equal age and respect. Both of these statutes were on the books when the Constitution of 1850 was adopted and when Mr. Justice DOUGLASS wrote the *Falkenbury Opinion* in 1852.

This is not a case of mere ineligibility to an office but one where the Constitution provides that all votes cast for one who is a member of the legislature were void. In point of law, defendant received no votes for the office which may be considered for any purpose. The ouster of defendant does not create a vacancy but only removes a usurper who has kept relator out of office.

In a democracy there is no higher authority by which a civil officer can receive an election or appointment than by the exercise of the elective franchise by qualified electors. This court said in *Fyfe* v. *Kent County Clerk*, 149 Mich. 349, cited in the opinion of Mr. Justice WIEST, that the terms "election" and "appointment" are synonymous. See, also, *McPherson* v. *Blacker,* 146 U. S. 1 (13 Sup. Ct. 3, 36 L. Ed. 869).

Connable and relator had the highest number of valid votes that could be counted for the office of regents of the University of Michigan and were duly elected. To hold otherwise, by declaring that a vacancy exists by reason of certain statutory provisions, is a clear attempt to circumvent the express provisions of the Constitution and, in effect, nullify its clear mandate.

No department of the State government, executive, legislative or judicial, has authority to disregard the letter or spirit of the Constitution.

Article 16, § 5, of the present Constitution, quoted by Mr. Justice WIEST, is not applicable to the instant case because article 5, § 7, is controlling.

It should therefore be determined that relator is entitled to the office of regent of the University of Michigan by virtue of the 1941 general election, upon compliance with the provisions of 3 Comp. Laws 1929, § 15276 (Stat. Ann. § 27.2320).

A judgment should issue ousting defendant from the office of regent and entitling relator to that office upon his compliance with the statute. It should be so ordered.

STARR, J., concurred with CHANDLER, C. J.